### Royal G. Ranney v. The Chicago, Burlington & Quincy Railroad Co.

1. Contributory Negligence—*Failure to Keep Gates Closed.*—It is the duty of the person whose stock is occupying lands adjoining a railroad to keep the gates at farm crossings closed, and any negligence on his part, or on the part of his servants, in that respect, will be fatal to a recovery of damages.

**Action for Killing Domestic Animals.**—Error to the Circuit Court of Henderson County; the Hon. John J. Glenn, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

Kirkpatrick & Alexander, attorneys for plaintiff in error.

Grier & Stewart, attorneys for defendant in error; O. F. Price, of counsel.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

The plaintiff in error brought suit before a justice of the peace against the defendant in error, to recover the amount of damages received by the former by means of the defendant in error running a locomotive attached to a train over certain cattle of the plaintiff in error at or near Shawgo's Crossing on the defendant in error's railroad in said county by means of which his cattle were injured and killed. The case was tried before a justice of the peace and judgment rendered in that court for the defendant in error, and upon appeal by the plaintiff in error to the Circuit Court the case

was again tried before a jury, resulting in a verdict for the defendant in error. The usual motion for a new trial made by plaintiff in error was overruled by the court and judgment rendered against him for costs, to reverse which said judgment this writ of error is sued out. The grounds relied upon for recovery by the plaintiff in error are the alleged negligence of the defendant in error in failing to keep the gate on the west side of the defendant in error's right of way at Shawgo's Crossing closed, by means of which the plaintiff in error's cattle passed through the right of way fence from what is called Mitchell's pasture, of which Shawgo was the tenant, by means of which the cattle came onto the railroad track in front of defendant in error's locomotive, were run over, injured and killed. The accident took place on June 18, 1892. The Shawgo Crossing was a private one, put in by the defendant in error for the benefit of the Mitchell farm upon which Shawgo was then living. The land was divided by the railroad, the pasture being on the west and the residence on the east of the right of way. The cattle injured, together with others, was a drove of about 100 head, and were left to pasture by plaintiff in error with James D. Hauer. Hauer owned 1,100 acres of land adjoining and immediately west of the Mitchell pasture, over all of which the cattle could range. The Mitchell meadow between the right of way and the Hauer land was about twenty to forty rods wide. Just immediately north of the Mitchell land was another tract belonging to Schlotshour and also occupied by Shawgo; there was a jog of about two rods in the line between the Hauer land and the Mitchell and Schlotshour land, the latter being the wider. The fence between the Mitchell and Hauer land was made of wire, somewhat dilapidated, except where there was a jog, where it was of boards, and an old gate, also dilapidated.

The evidence shows that prior to June 17th the section hands of the defendant company were working about a half mile north of the crossing, and it was a fact not disputed that on the evening of that day, upon their return from their work, the section boss and the other hands with him saw the gate open on the west side into the Mitchell pasture and

allowed it to remain open. There is no question but that the cattle came onto the right of way and to the railroad track through the open gate west of the Shawgo crossing, and plaintiff contends that the injury resulted from the negligence of the section men in passing the gate without closing it.

It is contended on the part of the defendant in error that the section men were not guilty of negligence in passing the gate and leaving it open under the circumstances; that those in charge of the cattle were guilty of negligence contributing to the injury. Defendant in error rests its defense on two or three other points amounting in substance to those stated and not necessary to notice: The state of the evidence on those points was somewhat as follows : It tended to show that on the evening of the 17th of June, the day previous to the accident, when the section men of the defendant in error passed the crossing, they saw the Shawgo gate on the west side of the track open, but at the same time saw Remus Shawgo, son of the tenant of the premises, with his team and wagon, who had passed over from their residence on the east side to get a cultivator from the west side, and thinking that he would very likely return in a short time through the gate to the east side, they relied upon his closing the gate, as it was his duty to do, and therefore they omitted to close the gate themselves. This state of fact, however, is disputed and questioned by the plaintiff in error, who insists that the evidence shows that Shawgo was not on the west side at the time the section men passed. We are of the opinion, however, that this was a fair question of fact for the jury, and that it was justified in finding according to the contention of the defendant in error on this point. The evidence also tended to show that plaintiff in error put his cattle in Hauer's pasture, leaving Hauer to look after them while they were there, though Ranney would come and look after them himself at times. The evidence also tended to show that Hauer had some hired men to plow for him and do other work, and though they were not specially commissioned or hired to look after the cattle, it was their duty to look after them when they were there and saw

that anything was necessary to be done for the safety and well keeping of the cattle. The evidence also tended to show that after the section men had passed the crossing in question on the evening of the 17th of June, these hired men of Hauer's, Albert Endicott, John Endicott, Rose, the foreman, and perhaps others, were plowing in Hauer's field not far from this meadow and not far from the crossing in question, and saw these cattle in the meadow and drove them out, and fixed the fence as well as they could, having no hammer or nails, and at the same time one of them saw Shawgo's gate open and did not close it. It is contended by counsel for plaintiff in error strenuously, that there was no sufficient evidence to authorize the jury to find that Hauer's hired men had any duty to perform as respected the safety of the cattle, but we think the jury were justified in believing from all the evidence and circumstances that while the hired men of Hauer had no special commission or appointment to specially look after the cattle and guard and tend them, yet they understood, and Hauer understood, that it was their duty as his hired men to look after his general interest, including the safety of the cattle, and if they saw anything out of the way whereby the cattle were in danger, it was their duty to look after the cattle and see that no harm came to them. They acted upon this understanding in driving the cattle out of the pasture, and while they could see the line fence between the Hauer land and Mitchell pasture was very unsafe and insecure, they failed to close the Shawgo gate. It was a question, then, for the jury to say whether the plaintiff, being chargeable with any negligence of the custodian of the cattle and those having them in charge, was not himself guilty of the negligence which caused the accident or materially contributed to it. On the facts in the case, then, this court would not feel justified in reversing the judgment for the reason that the verdict was contrary to the weight of the evidence.

The plaintiff in error makes some point against the admissibility of evidence, but we see no such error in that respect as would justify this court in reversing the judgment on that ground. Counsel for the plaintiff in error complains

of the modification of the fifth and sixth instructions given on his part. The fifth instruction was predicated upon the failure of the defendant in error in keeping a sufficient fence to keep the cattle from getting on the track, and the sixth instruction was predicated upon defendant's neglect in not keeping the gate closed, and the court modified both instructions by adding the words, "unless said cattle were injured through the want of ordinary care being exercised on the part of the plaintiff and those in charge of the cattle for him." As will be seen from what we have already said there was no error in this modification. The plaintiff in error says that he also objects to the giving by the court the defendant's sixth and tenth instructions on substantially the same ground just considered. He also complains that the tenth instruction assumes that Hauer's hired men were looking after the cattle. We do not think that a fair construction of the language of the instruction would warrant such a conclusion; the inference must be that the jury were to find from the evidence that Hauer and his hired men had a duty to perform in looking after them. We do not think the jury could have been misled on this point. There was no error, then, in giving those instructions. Objections to the third instruction given for the defendant is hypercritical and unsubstantial. We see no reasonable objection to the defendant's fourth instruction. We feel satisfied that substantial justice has been done in the case, and finding no error in the record the judgment of the court below is affirmed.